450

CLINTON ELDER *et al., Respondents,* v. MASSACHUSETTS
MORTGAGE COMPANY *et al., Appellants.*[1]

[1]Reported in 293 Pac. 711.

*William G. Long* and *Herman Murray,* for appellants.

*Welsh & Welsh,* for respondents.

PARKER, J.—The plaintiffs Elder and Mrs. Coulter seek recovery of damages claimed as the result of the wrongful seizure, detention and damaging by the defendants mortgage company and the sheriff of an automobile owned by them. A trial upon the merits in the superior court for Pacific county, sitting without a jury, resulted in findings and judgment awarding to the plaintiffs recovery in the sum of $915, from which the mortgage company and the sheriff have appealed to this court.

On March 2, 1926, C. S. Sheldon, the then owner of the automobile in question, executed and delivered to the mortgage company a chattel mortgage upon the automobile purporting to secure an indebtedness of $1,296 owing by him to the mortgage company. On April 8, 1926, Sheldon sold and delivered the automobile to Mrs. Coulter for the sum of $1,627. On April 13, 1926, Mrs. Coulter gave to Elder a conditional sale contract for the sale of the automobile by her to him, the purchase price to be payable in periodical installments, then placing the automobile in his possession. There is no controversy between Elder and Mrs. Coulter as to the ownership of the automobile, so for present purposes we may regard both of them as the owners in common.

On May 15, 1926, the mortgage company, claiming the mortgage to be in full force and effect and the debt thereby secured to be wholly unpaid, commenced foreclosure thereof by the summary proceeding of notice and sale as provided by Rem. Comp. Stat., § 1104, and following, and, to that end on that day, caused the defendant sheriff to seize the automobile, taking it from

the possession of Elder. On May 26, 1926, Elder and Mrs. Coulter caused the foreclosure proceeding to be transferred to the superior court for Pacific county, as was their right under Rem. Comp. Stat., § 1110, alleging their ownership of the automobile, and that the debt secured by the mortgage had been fully paid to the mortgage company.

Upon the issues so made, the foreclosure proceeded to trial upon the merits in the superior court, resulting in a final judgment denying to the mortgage company its claim of mortgage lien upon the automobile. Soon thereafter, the mortgage company, on May 30, 1927, caused the sheriff to return the automobile to the possession of Elder, it having been held in the possession of the sheriff at the instance of the mortgage company pending the foreclosure proceeding since May 15, 1926. Elder and Mrs. Coulter did not tender in the foreclosure proceedings any issue of damages or seek recovery of any damages therein for the wrongful seizure, detention or injury of the automobile, and no adjudication of any such damages was rendered in that proceeding. Thereafter this action was commenced by Elder and Mrs. Coulter seeking recovery of such damages from the mortgage company and the sheriff.

The principal contention here made in behalf of appellants mortgage company and the sheriff is that the judgment in the foreclosure proceeding became *res adjudicata* and a bar to the present action, in that, while the question of damages suffered by respondents was not actually litigated or adjudicated in that proceeding, respondents Elder and Mrs. Coulter were required to litigate and have that question adjudicated therein, or be held to have waived their right to such damages.

It will be conducive to a correct understanding

of our problem to first take note of the real nature of the foreclosure proceeding. The contentions and argument of counsel for appellants manifestly proceed upon the theory that, because respondents were the moving parties, plaintiffs in name, in the transfer of the foreclosure proceeding to the superior court, they, in substance as well as in name, thereby became the plaintiffs in the foreclosure proceedings, and that they thereby were necessarily seeking affirmative relief, rather than resisting the affirmative foreclosure relief sought by appellants in that proceeding.

It is true that respondents were proceeding affirmatively in so far as they sought transfer of the foreclosure proceeding to the superior court; but it is also true that, the foreclosure proceeding having been so transferred to the superior court, respondents' resisting the mortgage company's claimed foreclosure upon the merits was negative. They were, as to the merits, in the same position as if the mortgage company had originally commenced its foreclosure, making them parties defendant, by the usual suit in equity for that purpose in the superior court. Section 1110, Rem. Comp. Stat., reads:

"The right of the mortgagee to foreclose, as well as the amount claimed to be due, may be contested by any person interested in so doing, and the proceedings may be transferred to the superior court, for which purpose an injunction may issue if necessary."

This refers to the transfer of a summary notice and sale foreclosure proceeding to the superior court to enable anyone interested to defend against the foreclosure upon the merits. Manifestly, when the transfer has been so effected, the foreclosure proceeding proceeds just as if it had been originally commenced in the superior court by the mortgagee, and the mere fact that the resisting parties happen to call them-

selves plaintiffs in seeking transfer of the proceeding to the superior court, as occurred in this case, does not make them plaintiffs as to the merits of the foreclosure.

It is true that one seeking transfer of a summary foreclosure proceeding to the superior court must, in his application therefor, show, by proper allegation, such interest in the property as entitles him to resist the foreclosure; and must also negative, by appropriate denials or allegations, the mortgagee's right of foreclosure, in order to entitle him to a transfer of the proceeding to the superior court, as was held in *West Coast Grocery Co. v. Stinson,* 13 Wash. 255, 43 Pac. 35, and *Kidder v. Beavers,* 33 Wash 635, 74 Pac. 819.

But, when one seeking transfer of a summary foreclosure proceeding to the superior court has so properly pleaded his right in that behalf, the transfer of the summary proceeding to the superior court becomes a matter of right in him. In *State ex rel. Wenatchee Buick Co. v. Superior Court,* 135 Wash. 664, 238 Pac. 614, there was drawn in question a claimed attachment lien right as a cause for transferring a summary notice and sale chattel mortgage foreclosure to the superior court. Holding that such a claim, accompanied by allegations negativing the mortgagee's right of foreclosure, gave to the claimant the right of transfer, as a matter of right, Judge Bridges, speaking for the court, said:

"Friedman unquestionably has such an interest in the subject-matter of the foreclosure as that he has a right to have the proceeding removed to the superior court. He has an attachment, and the Wenatchee company has a chattel mortgage, on the Buick car. There is a contest between the two as to which lien is senior. If Friedman's charges set out in the petition for removal are true, then probably the mortgage is void and in any event its lien would likely be subject and

junior to the attachment lien. These are issues which can and should be tried out in the mortgage foreclosure proceeding. If the relator, to wit, the mortgagee, had in the first place sought to foreclose its mortgage through the medium of the courts, making Friedman a party defendant thereto, the latter unquestionably could contest the foreclosure on the very grounds alleged in his petition for removal. We think it ought to be, and is, the law that anything which would be a *bona fide* defense to the foreclosure of a mortgage by the courts ought to be sufficient interest to justify the removal of the foreclosure from the sheriff to the courts.''

As further showing the unqualified nature of this right of transfer, in *State ex rel. South Alaska Canning Co. v. Superior Court,* 128 Wash. 100, 222 Pac. 203, we held that one making proper showing in that behalf was entitled as a matter of right, without furnishing bond, to have the summary proceeding enjoined pending the continuation of the foreclosure proceeding in the superior court. So we conclude that respondents stood in the foreclosure proceeding, both while being prosecuted in summary form and while being prosecuted in the superior court, simply as defendants resisting the mortgage company's attempted foreclosure.

█ This, then, becomes the real question to be decided here: Is the defendant in a chattel mortgage foreclosure proceeding, accompanied by seizure and retention of the claimed property pending the foreclosure, bound to set up and ask to have adjudicated in the foreclosure proceeding damages which he may have suffered by reason of the wrongful seizure and retention of the claimed mortgaged property pending the foreclosure, which foreclosure fails and thus renders the seizure wrongful, or thereafter be precluded from seeking such damages in another later commenced independent action? We are of the opinion that his

right of recovery of such damages is not so limited, because it is not a cause of action existing at the time of the commencement of the foreclosure proceeding; nor is his right to such damages in any sense material to the determination of the mortgagee's claimed right of foreclosure. That is, whether the property is wrongfully or rightfully seized and retained incident to the foreclosure proceeding is not determinative of the mortgagee's right of foreclosure. Manifestly, such a claim for damages could not be successfully set up as an offset against the amount ultimately adjudicated as due upon the mortgage debt by the foreclosure judgment. The only possible theory of which we can conceive as supporting such a damage claim in the foreclosure proceeding, would be that of counterclaim, since there could be no recovery thereon except an affirmative recovery following a denial by the court of the claimed foreclosure. In *Tacoma Mill Co. v. Perry*, 32 Wash. 650, 73 Pac. 801, there was drawn in question a claim of damages, by independent action, for a wrongful attachment which had been issued and levied and later set aside in a prior action. It was held that such a claim was not a proper subject of adjudication in the action in which the attachment was issued. Judge Dunbar, speaking for the court in so deciding, said:

"The question is whether under the provisions of the code a counterclaim for damages arising out of the issuance of an attachment can be pleaded in answer to a complaint in the original action, where the attachment has been dissolved. Section 4912, Bal. Code [§ 265, Rem. Comp. Stat.], provides that the answer of the defendant must contain, first, a general or specific denial of each material allegation of the complaint; second, a statement of any new matter constituting a defense or counterclaim. Section 4913 is as follows:

"'The counterclaim mentioned in the preceding

section must be one existing in favor of the defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: (1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action; (2) in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.'

"It is evident that the counterclaim in this case did not arise on contract and was not a cause of action arising on contract, and existing at the commencement of the action. Therefore it cannot fall within paragraph 2. It was not a cause of action arising out of the contract or transaction set forth in the complaint as a foundation of the plaintiff's complaint, and, if it is authorized by the statute at all, it is so authorized by the concluding sentence of § 1, viz, 'or connected with the subject of the action.' . . . The subject of the action in this case was trespass, and it is difficult to see how damages arising from the execution of a process issued by a court could be in any manner connected with the trespass alleged to have been committed by the defendant."

This view of the law was adhered to where were drawn in question claimed damages for wrongful attachments in *Veysey v. Thompson,* 49 Wash. 571, 95 Pac. 1096, and *First National Bank of Wenatchee v. Fowler,* 54 Wash. 65, 102 Pac. 1038. It seems plain to us that this view of the law is equally applicable to this damage claim for wrongful seizure and retention of the automobile incident to the mortgage company's attempted foreclosure. Our conclusion finds strong support in *Hembrock v. Stark,* 53 Mo. 588; *Carver v. Shelley,* 17 Kan. 472; *Kramer v. Electric Light Co.,* 95 N. C. 277, and *Jones v. Swank,* 54 Minn. 259. Counsel for appellants cite and rely upon our decision in *Woodland v. First National Bank of Lind,* 124 Wash. 360,

214 Pac. 630. We think a critical reading of that decision will readily show that it is of no controlling force in this controversy.

Some contention is made in behalf of appellants rested upon the theory that the wrongful seizure of the automobile by the sheriff at the instance of the mortgage company occurred before the commencement of the foreclosure proceeding in the superior court, and hence was subject to adjudication in the court proceeding. A sufficient answer to this contention, it seems to us, is that the foreclosure proceeding was commenced by the mortgage company when it placed in the hands of the sheriff its notice of the sale of the property in satisfaction of its claimed mortgage debt, and then authorized the sheriff to seize the property pending that sale, as prescribed by Rem. Comp. Stat., §§ 1106 and 1112. In other words, the foreclosure proceeding was not commenced in the superior court. It was but transferred to the superior court, as was the plain right of respondents to have it transferred, after it had been so commenced as a summary notice and sale foreclosure proceeding. We are of the opinion that the damage suffered by respondents by the seizure of the automobile did not accrue prior to, nor did it exist at the time of, the commencement of the foreclosure proceeding by the mortgage company.

It is contended in behalf of appellants that the damages awarded by the trial court to respondents are excessive. The automobile was practically new when it was seized and taken from the possession of Elder by the sheriff. The following are items found by the trial judge which he took into consideration in arriving at his awarding to respondents damages in the sum of $915: Loss to respondents by depreciated value, from abuse of the automobile, and depreciation by reason of approximately one year's increased age

while kept from respondents, $827; loss to respondents by deprivation of use of the automobile for approximately one year, $630. It is somewhat difficut to get from the judge's findings his exact method of computation in arriving at the final $915 damage award, but it is in any event plain that that sum is well within the proof as to damages suffered by appellants. The $827 difference between its value at the time it was seized and its value at the time of its return is well supported by the evidence. The loss of the use of the automobile during that time was at least $88, the difference between the $827 and the $915 award. We think the judgment should not be disturbed upon the ground of excessive damages.

The judgment is affirmed.

MITCHELL, C. J., MAIN, HOLCOMB, MILLARD, and BEELER, JJ., concur.

BEALS, J. (dissenting)—I concur in the foregoing opinion save as to the amount of damages for which recovery is allowed. In my opinion such a recovery is not supported by the evidence and the amount should be materially reduced.

TOLMAN and FULLERTON, JJ., concur with BEALS, J.